UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

_____

IN RE MENTOR CORP. OBTAPE                MDL CASE NO.: 4:08MD2004
TRANSOBTURATOR SLING PRODUCTS
LIABILITY LITIGATION                     JUDGE CLAY D. LAND

_____

JANICE YOUNG and RAYMOND YOUNG,          CIVIL ACTION NO.:

                                                                       4-13-cv-476 (CDL)

     Plaintiffs,

vs.

MENTOR WORLDWIDE LLC, COLOPLAST A/S,
COLOPLAST COPROATION, COLOPLAST
MANUFACTURING, US, LLC, RTI BIOLOGICS,
INC., RTI SURGICAL, INC. and TUTOGEN
MEDICAL, INC., a subsidiary of RTI
BIOLOGICS, INC.

     Defendants.

_____

## COMPLAINT

      Plaintiffs Janice Young and Raymond Young ("Plaintiffs") sue the Defendants and allege as follows:

      1.    Plaintiffs are residents and citizens of the state of Arkansas. At all relevant times, Plaintiffs lived and resided together as husband and wife.

      2.    Defendant Mentor Worldwide, LLC is, a limited liability corporation organized and existing under the laws of the State of Delaware, maintaining its principal place of business at 5425 Hollister Avenue, Santa Barbara, CA 93111. Upon information and belief, Mentor

1

Worldwide, LLC ("Mentor Worldwide") has assumed the assets and liabilities of Mentor Corporation ("Mentor").

3. Defendant Coloplast A/S is a corporation organized and existing under the laws of the Kingdom of Denmark maintaining its principal place of business at Holtedam 1, Humlebaek 3050, Kingdom of Denmark, and maintaining its North American principal place of business at 1601 West River Road North, Minneapolis, Minnesota 55411. Coloplast A/S moved its North America Headquarters to Minneapolis in June 2006.

4. Defendant Coloplast Corporation ("Coloplast Corp.") is a corporation organized and existing under the laws of the State of Delaware, maintaining its principal place of business at 1601 West River Road North, Minneapolis, Minnesota 55411. Coloplast Corp. is a wholly owned U.S. sales and marketing subsidiary of Coloplast A/S.

5. Defendant Coloplast Manufacturing US, LLC is a limited liability corporation organized and existing under the laws of the State of Delaware, maintaining its principal place of business at 1940 Commerce Drive, North Mankato, MN 56002. Its registered office is 560 Park Street, #6, St. Paul, Minnesota 55103. Coloplast Manufacturing US, LLC is a wholly owned subsidiary of Coloplast Corp. Coloplast Corp., Coloplast A/S, and Coloplast Manufacturing US, LLC are collectively referred to herein as "Coloplast."

6. Defendant RTI Biologics, Inc. is a corporation organized and existing under the laws of the State of Delaware, maintaining its principal place of business at 11621 Research Circle, Alachua, FL 32615.

7. Defendant RTI Surgical, Inc. (formerly RTI Biologics, Inc.) is a corporation organized and existing under the laws of the State of Delaware, maintaining its principal place of business at 11621 Research Circle, Alachua, FL 32615.

2

8.     Defendant Tutogen Medical, Inc., a subsidiary of RTI Biologics, Inc., is a corporation organized and existing under the laws of the State of Florida, maintaining its principal place of business at 11621 Research Circle, Alachua, FL 32615.  On February 27, 2008, Regeneration Technologies, Inc. and Tutogen Medical, Inc. merged to create RTI Biologics, Inc.  Defendants RTI Biologics, Inc., RTI Surgical, Inc. and Tutogen Medical, Inc. are collectively referred to herein as "RTI."

9.     This action is being direct filed as a potential tag-along case to the multi-district litigation proceedings currently pending before this court, IN RE MENTOR CORP. OBTAPE TRANSOBTURATOR SLING PRODUCTS LIABILITY LITIGATION, MDL 2004, Case No. 4:08 MD 02004 CDL.

10.    This action is being direct filed in the Middle District of Georgia pursuant to Judge Land's December 12, 2011 order authorizing direct filing [DE 446].

11.    Plaintiffs are seeking damages in excess of $75,000.00, exclusive of interest and costs.

12.    The Defendants have been and/or currently are engaged in business, directly or by authorized agent, in Pulaski County, Arkansas.  Venue and jurisdiction are therefore proper, as to these Plaintiffs, in the United States District Court for the Eastern District of Arkansas and in MDL No. 2004 in the Middle District of Georgia.

13.    By directly filing this Complaint in MDL 2004 in the Middle District of Georgia. Plaintiffs do not waive their right to trial in the United States District Court for the Eastern District of Arkansas.  Plaintiffs seek remand to the Eastern District of Arkansas for the trial of this case.

## **FACTUAL ALLEGATIONS - MENTOR**

14. At all times material hereto, Mentor conducted business within the States of Georgia and Arkansas, including maintenance of a sales force within the States of Georgia and Arkansas, and manufactured, tested, analyzed, distributed, labeled, sold, supplied, marketed and/or promoted a transobturator vaginal sling product known as "ObTape" and placed said medical device into the stream of commerce.

15. Upon information and belief, Mentor Worldwide has assumed the assets, rights and obligations of Mentor Corporation and as such, is responsible to the Plaintiffs for damages incurred as a result of the Obtape device implanted in Plaintiff Janice Young.

16. Mentor began to first market its ObTape brand transobturator vaginal sling in the United States in 2003.

17. Upon information and belief, at the time that Mentor first introduced its ObTape brand transobturator vaginal sling to the market in 2003, the product had undergone inadequate pre-market testing to determine the safety and efficacy of the medical device prior to implantation in humans, and said testing was limited to animal testing (and included only three rabbits).

18. However, even the limited animal testing conducted by Mentor prior to first marketing the ObTape brand transobturator vaginal sling in 2003 had demonstrated that the medical device caused adverse tissue reactions in the rabbits.

19. Further, upon information and belief, Mentor knowingly and deliberately made material misrepresentations to the Food & Drug Administration ("FDA") concerning the safety, efficacy, design, and manufacture of its ObTape brand transobturator vaginal sling.

20. After 2003, upon information and belief, Mentor performed no additional safety or efficacy testing in human vaginal tissues to confirm that the medical device was safe and effective for use in women.

21. From 2003 through March of 2006, Mentor continued to manufacture, market, distribute, and sell this device to thousands of women even though Mentor knew that the product had been inadequately tested for safety and efficacy (both prior to and after its approval for sale in the United States), contained significant manufacturing and design defects that posed unnecessary risks to patients, and also despite knowing that numerous patients had suffered harm attributable to the defective condition of the medical device and the negligence of Mentor.

22. Prior to Plaintiff Janice Young's implantation with the Obtape device, Mentor was on notice of numerous patients who had been harmed by its ObTape brand transobturator vaginal sling, including a significant number of women who suffered vaginal erosion, infection, extrusion, perforation and/or abscess after implantation with its device.

23. Mentor did not cease to manufacture, market, distribute, and sell its ObTape brand transobturator vaginal sling until approximately March of 2006, and even after its withdrawal of the medical device from the market due to safety issues, Mentor failed to provide adequate warnings and notice to physicians and/or patients regarding the unacceptably high rate of vaginal ObTape brand transobturator vaginal sling and the best methods for treating patients who were previously implanted with the defective devices, including Plaintiff Janice Young.

24. This failure to provide adequate warnings and information to physicians and/or patients following withdrawal of the medical device from the market in March of 2006 led to unnecessary suffering and delay in obtaining appropriate medical treatment for Plaintiff Janice

Young as well as the thousands of other women who were implanted with the defective medical device.

**FACTUAL ALLEGATIONS - MENTOR, COLOPLAST, RTI**

25. At all times material hereto, Mentor, Coloplast and RTI conducted business within the States of Georgia and Arkansas, including maintenance of a sales force within the States of Georgia and Arkansas and manufactured, tested, analyzed, distributed, labeled, sold, supplied, marketed and/or promoted a tissue graft product known as "Tutoplast Fascia Lata" and placed said medical device into the stream of commerce.

26. Mentor, Coloplast and RTI are and have been at all times pertinent to this proceeding engaged in the design and manufacturing of medical technologies used by urologists, urogynecologists, and gynecologists to diagnose and treat a variety of urologic conditions, including, but not limited to, stress urinary incontinence and pelvic organ prolapse. Mentor, Coloplast and RTI designed, manufactured, packaged, labeled, marketed, sold, and distributed the Tutoplast Fascia Lata implanted in Plaintiff Janice Young

27. Upon information and belief, Mentor Worldwide has assumed the assets, rights and obligations of Mentor and as such, is responsible to the Plaintiffs for damages incurred as a result of the Tutoplast Fascia Lata device implanted in Plaintiff Janice Young.

28. Mentor began to first market its Tutoplast Fascia Lata graft in the United States, after obtaining FDA approval to market the Tutoplast Fascia Lata under Section 510(k) of the Medical Device Amendment to the Food, Drug and Cosmetics Act.

29. At all relevant times, Coloplast was in the business of developing, designing, licensing, distributing, selling, marketing, advertising, and delivering, and introducing into interstate commerce including, inter alia, within the United States and, specifically, within the

6

States of Georgia and Arkansas, either directly or indirectly through third parties, subsidiaries or related entities, transvaginal meshes.

30.     Upon information and belief, on June 2, 2006, Mentor sold its surgical, urological, clinical and consumer healthcare business segments to Coloplast for $461,145,398 and Coloplast assumed liability arising out of Mentor products beginning in June 2, 2006.

31.     Coloplast's annual report for 2009-2010 reported that "the majority of our acquired patents and trademarks are associated with the acquisition of Mentor's urology, business in 2006." The annual report also said that Mentor signed "a non-competition clause prohibiting Mentor (the seller) from selling urology product for the next seven years…."

32.     RTI prepares donated human tissue and bovine tissue for transplantation through extensive testing and screening, precision shaping, and proprietary, validated sterilization processes. According to its website, RTI is the leading provider of sterilized biological implants for surgeries around the world.

33.     RTI prepares a number of biologic implants for various uses, including Tutoplast Fascia Lata, which is marketed for the repair of stress urinary incontinence and/or pelvic organ prolapse.

34.     Upon information and belief, RTI, through Tutogen Medical, Inc., supplied Mentor with Tutoplast Fascia Lata for urological and gynecological indications. In 2003, Mentor accounted for 13% (urological) and 18% (gynecological) of Tutogen Medical, Inc.'s United States revenues.

35.     Tutoplast Fascia Lata is created through a Tutoplast cleaning process intended to inactivate transmissible pathogens such as HIV, Creutzfeldt-Jakob disease, and hepatitis. The

Tutoplast cleaning process includes tissue cleaning, processing, dehydration, and preservation. All organic material is removed from the tissue during this process.

36. Prior to implantation, the Tutoplast Fascia Lata is put through cleaning process to allegedly make it more compatible with a patient's existing tissue. Upon information and belief, this cleaning process, and other similar processes performed on biologic tissue grafts, actually causes the graft to become biologically incompatible with human tissue which promotes an immune response in a large subset of the population receiving these grafts. Upon information and belief, collagen products cause hyper-inflammatory responses leading to problems including chronic pain and fibrotic reaction. Collagen products disintegrate after implantation in the female pelvis. The collagen products cause adverse tissue reactions, and are causally related to infection, as the collagen is a foreign material derived from animal and/or human tissue. The collagen is harsh upon the female pelvic tissue. When mesh is inserted in the female body according to the manufacturers' instructions, it creates a nonanatomic condition in the pelvis leading to chronic pain and functional disabilities.

37. Prior to Plaintiff Janice Young's implantation with the Tutoplast Fascia Lata device, Mentor, Coloplast and RTI were on notice of numerous patients who had been harmed by the Tutoplast Fascia Lata graft, including a significant number of women who suffered vaginal erosion, infection, extrusion, perforation and/or abscess after implantation with this tissue graft product.

38. This failure to provide adequate warnings and information to physicians and/or patients led to unnecessary suffering and delay in obtaining appropriate medical treatment for Plaintiff Janice Young as well as the thousands of other women who were implanted with the defective medical devices.

## FACTUAL ALLEGATIONS - GENERAL

39.     On or about November 17, 2003, Plaintiff Janice Young was implanted with an ObTape brand transobturator vaginal sling designed, manufactured, packaged, labeled and sold by Mentor Corporation. The subject sling was intended to treat her for stress urinary incontinence, a use for which Mentor marketed the product.

40.     On or about November 6, 2006, Plaintiff Janice Young was implanted with a Tutoplast Fascia Lata graft also manufactured, packaged, labeled and sold by Mentor, Coloplast and RTI.  The subject tissue graft was intended to treat her for stress urinary incontinence, a use for which the Mentor, Coloplast and RTI marketed the product.

41.     The Obtape device and Tutoplast Fascia Lata device will be collectively referred to as "the Products."

42.     Plaintiff Janice Young's treating physicians implanted the Products properly and appropriately.

43.     Until November 2011, Plaintiff Janice Young did not know or have reason to know that the Products were defective.  Plaintiff Janice Young did not have reason to know that the Products were defective because the Defendants concealed facts relating to the Products' failure to perform as intended from her, her health care providers, and the general public. Plaintiff Janice Young exercised due diligence by visiting health care providers to treat and diagnose the injuries she sustained as a result of having the Products implanted.  However, despite her due diligence, Plaintiff Janice Young was not made aware nor had reason to be aware that the Products were defective.

44.     Subsequent to these implantation surgeries, and as a direct and proximate result of the defective condition of the Products, Plaintiff Janice Young suffered serious and permanent

bodily injuries, including erosion of one or more of the Products through her internal bodily tissues, chronic infections, pain, exacerbation of her urinary incontinence, and the need for additional surgical procedures and medical treatment as well as the need for extensive future medical care.

## CAUSES OF ACTION

### COUNT I: NEGLIGENCE

31. Plaintiffs incorporate by reference paragraphs 1-30 of this Complaint as if fully set forth herein.

32. Defendants had a duty to individuals, including Plaintiff Janice Young, to use reasonable care in designing, manufacturing, marketing, labeling, packaging, and selling the Products.

33. Defendants were negligent in failing to use reasonable care in designing, manufacturing, marketing, labeling, packaging, and selling the Products.

34. As a direct and proximate result of Defendants' negligence, Plaintiff Janice Young was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

### COUNT II: DESIGN DEFECT

35. Plaintiffs incorporate by reference paragraphs 1-34 of this Complaint as if fully set forth herein.

36. The Products implanted in Plaintiff Janice Young were not reasonably safe for their intended uses and were defective as a matter of law with respect to their design.

37. As a direct and proximate result of the Products' aforementioned defects, Plaintiff Janice Young was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

38. Defendants are liable to the Plaintiffs for designing, manufacturing, marketing, labeling, packaging, and selling the defective Products.

## COUNT III: MANUFACTURING DEFECT

39. Plaintiffs incorporate by reference paragraphs 1-38 of this Complaint as if fully set forth herein.

40. The Products implanted in Plaintiff Janice Young were not reasonably safe for their intended uses and were defective as a matter of law with respect to their manufacture.

41. As a direct and proximate result of the Products' aforementioned defects, Plaintiff Janice Young was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

42. Defendants are liable to the Plaintiffs for designing, manufacturing, marketing, labeling, packaging, and selling the defective Products.

## COUNT IV: FAILURE TO WARN

43. Plaintiffs incorporate by reference paragraphs 1-42 of this Complaint as if fully set forth herein.

44. The Products implanted in Plaintiff Janice Young were not reasonably safe for their intended uses and were defective as a matter of law due to their lack of appropriate and necessary warnings.

45. As a direct and proximate result of the Products' aforementioned defects, Plaintiff Janice Young was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

46. Defendants are strictly liable to the Plaintiffs for designing, manufacturing, marketing, labeling, packaging, and selling the defective Products.

## COUNT V: BREACH OF EXPRESS WARRANTY

47. Plaintiffs incorporate by reference paragraphs 1-46 of this Complaint as if fully set forth herein.

48. Defendants made assurances to the general public, hospitals, and health care professionals that the Products were safe and reasonably fit for their intended purposes.

49. Plaintiff Janice Young and/or her health care provider chose the Products based upon Defendants' warranties and representations regarding the safety and fitness of the Products.

50. Plaintiff Janice Young, individually and/or by and through her physician, reasonably relied upon Defendants' express warranties and guarantees that the Products were safe, merchantable, and reasonably fit for their intended purposes.

51. Defendants breached this express warranty because the Products implanted in Plaintiff Janice Young were unreasonably dangerous and defective and not as Defendants had represented.

52. Defendants' breach of their express warranties resulted in the implantation of unreasonably dangerous and defective Products in Plaintiff Janice Young's body, placing her health and safety in jeopardy.

53. As a direct and proximate result of Defendants' breach of the aforementioned express warranties, Plaintiff Janice Young was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

## COUNT VI: BREACH OF IMPLIED WARRANTY

54. Plaintiffs incorporate by reference paragraphs 1-53 of this Complaint as if fully set forth herein.

55. Defendants impliedly warranted that the Products were merchantable and were fit for the ordinary purposes for which they were intended.

56. When the Products were implanted in Plaintiff Janice Young to treat her stress urinary incontinence, the Products were being used for the ordinary purpose for which they were intended.

57. Plaintiff Janice Young, individually and/or by and through her physician, relied upon Defendants' implied warranty of merchantability in consenting to have the Products implanted in her.

58. Defendants breached these implied warranties of merchantability because the Products implanted in Plaintiff Janice Young were neither merchantable nor suited for their intended uses as warranted.

59. Defendants' breach of their implied warranties resulted in the implantation of unreasonably dangerous and defective Products in Plaintiff Janice Young's body, placing her health and safety in jeopardy.

60. As a direct and proximate result of Defendants' breach of the aforementioned implied warranties, Plaintiff Janice Young was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

## COUNT VII: LOSS OF CONSORTIUM

61. Plaintiffs incorporate by reference paragraphs 1-60 of this Complaint as if fully set forth herein.

62. As a direct and proximate result of the above-described injuries sustained by Plaintiff Janice Young, her husband, Plaintiff Raymond Young, has sustained a loss of his wife's consortium, companionship, society, affection, services, and support.

## COUNT VIII: PUNITIVE DAMAGES

63. Plaintiffs incorporate by reference paragraphs 1-62 of this Complaint as if fully set forth herein.

64. Defendants acted with reckless indifference to the consequences that would result from their actions. The Defendants were aware, from their knowledge of existing circumstances and conditions, that their conduct would probably cause injury to Plaintiff Janice Young and others.

65. Defendants sold the Products to Plaintiff Janice Young's health care providers and other health care providers throughout the United States without conducting adequate testing to ensure that the Products were reasonably safe for implantation in the female pelvic area. Defendants knew that their decision to not conduct adequate testing would probably cause injury to Plaintiff Janice Young and others.

66. Defendants sold the Products to Plaintiff Janice Young's health care providers and other health care providers throughout the United States without doing adequate testing to determine whether the Products degraded *in vivo*. The Products do, in fact, degrade *in vivo*, which causes the severe and debilitating injuries suffered by Plaintiff Janice Young and numerous other women. Defendants knew that their decisions to not conduct adequate testing to determine whether the Products degraded *in vivo* would probably cause injury to Plaintiff Janice Young and others.

67. Defendants acted with conscious disregard to the rights of Plaintiff Janice Young and others. The Defendants were aware, from their knowledge of existing circumstances and conditions, that their conduct would probably cause injury to Plaintiff Janice Young and others.

68. Defendants ignored reports from health care providers throughout the United States of the Products' failures to perform as intended, which lead to the severe and debilitating injuries suffered by Plaintiff Janice Young and numerous other women. Rather than conducting adequate testing to rule out the Products' design or the process by which the Products are manufactured as the causes of these severe and debilitating injuries, Defendants chose instead to instruct their sales forces to downplay the Products' risks, and have continued to market and sell the Products as a safe and effective way to treat stress urinary incontinence. Defendants knew that their decision to ignore reports and continue to market and sell the Products would probably cause injury to Plaintiff Janice Young and others.

69. Defendants' conduct as described in this Complaint, for which the Plaintiffs are entitled to recover compensatory damages, manifested a conscious disregard of, and/or reckless indifference to, the consequences of their actions and the safety of those persons who might

foreseeably have been harmed by the Products, including Plaintiff Janice Young, justifying the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

    a.    compensatory damages on each cause of action;

    b.    punitive damages on each cause of action;

    c.    reasonable attorneys' fees where recoverable;

    d.    costs of this action;

    e.    loss of consortium, companionship, society, affection, services, and support, and;

    f.    such other additional and further relief as the Court may deem necessity, appropriate, and just.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all counts and issues.

Date: October 25, 2013

/s/Kendall C. Dunson
Kendall C. Dunson  (GA Bar# 234663)
Andy D. Birchfield, Jr.
P. Leigh O'Dell
Wesley Chadwick Cook
Counsel for Plaintiffs
Beasley, Allen, Crow
Methvin, Portis & Miles, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 Telephone
(334) 954-7555 Facsimile
Email: chad.cook@beasleyallen.com